BLANCHE, Judge.
This is a suit arising out of two purported oral agreements which were incidental to and contemporaneous with the sale of a rental house from plaintiff, William F. Lawless (hereinafter referred to as “Lawless”), to defendant, Gulf South Title Insurance Agency, Inc. (hereinafter referred to as “Gulf”), and the second sale of a home from Gulf to Lawless.
Lawless sued Gulf seeking rescission of the home sale, return of a $1,500 deposit, the cost of repairs he allegedly performed on Gulf’s rental house and the cost of repairs to the newly purchased home of Lawless. Gulf reconvened, seeking the costs incurred to repair the rental house, which repairs Gulf alleges it was forced to make, plus additional expenses incurred in conjunction with the sale and maintenance of the rental house.
Both parties have appealed the judgment of the trial court, which was in favor of Gulf for $1,500, plus all costs and expert witness fees of $50. The judgment in Gulf’s favor is amended and as amended, affirmed.
On January 9, 1974, Lawless sold to Gulf a rental house located on Lots 18 and 20, Square 32, East Garden City, in the Parish of East Baton Rouge, Louisiana, for the recited sum of $16,500 cash.
That same day Gulf sold to Lawless a house located on Lot 185, Iberville Terrace Subdivision, Third Filing, in the Parish of East Baton Rouge, Louisiana, for the sum of $39,900, financed through Standard Mortgage Corporation, on which the loan was guaranteed by the Veterans Administration. This house was to be Lawless’ home.
At the time of the sales, Lawless orally contracted to repair the rental property so that it would meet the standards for the loan guaranteed by the Veterans Administration. To insure that the repairs would be performed according to the agreement, Gulf withheld $1,500 from the price it was to pay Lawless.
Lawless contends that at the same time a second oral agreement was reached whereby Gulf was to remedy certain defects in the Iberville Terrace house.
The terms, and even the very existence, of these oral agreements are not completely clarified by the testimony and evidence presented at trial. However, in an attempt to reconstruct the agreements, we carefully considered both the entire record and the facts found by the trial judge. Our findings are set forth as follows.
Bobby L. Forrest was the president and sole stockholder of Gulf.
On October 23, 1973, after negotiations with realtor Hoyle Buckley and builder Jim Forrest, brother of Bobby Forrest, Lawless signed a purchase agreement to buy the Iberville Terrace property from Gulf, conditioned upon obtaining V.A. approval.
That same day Jim Forrest, acting as the agent of Bobby Forrest, signed a purchase agreement obligating Gulf to buy the described rental property from Lawless.
On November 19, 1973, a Veterans Administration certificate of reasonable value was prepared by a duly authorized inspector listing the value of the Iberville Terrace house as $39,900. Since the house was not completely finished, the certificate was made subject to installation of the air conditioner compressor and window screens, painting exterior wood trim, repairing cook top, repairing holes in sheet-rock, repairing certain light fixtures, and replacing missing light fixtures.
Lawless’ purchase of the house was entirely dependent upon 100 percent Veterans Administration financing since at the time he was financially unable to obtain the down payment required by conventional lenders.
*882 At Gulf’s request on January 4, 1974, a Veterans Administration certificate of reasonable value was also obtained on the rental property indicating a worth of $16,500. Because the house was in a state of disrepair, that appraisal was made subject to replacing all rotted wood on the exterior, painting exterior with two coats of paint, replacing five broken screens, and installing taped, floated, and stippled sheet-rock on all interior ceilings and walls.
Gulf was buying the rental house for resale and required the certificate of reasonable value since, due to the location of the house, V.A. or F.H.A. financing would have probably been the only available method of financing the house to a future purchaser. In effect, Gulf wanted to insure that it could resell the house after it was purchased from Lawless.
The sales were passed on January 9, 1974. At the sale Gulf’s president, Bobby Forrest, demanded that it be allowed to withhold $1,500 from the purchase price of the rental house. It is clear that this money was to insure Gulf that all materials used by Lawless to bring the rental house up to V.A. standards were paid for by Lawless. Gulf was not concerned at that point with the possibility of labor liens, since Lawless was to perform all of the labor personally.
Gulf contends that Lawless agreed to perform the work within thirty days and that $1,500 was to be returned to Lawless upon completion of the repairs if the house was not subj ect to liens.
On the other hand, Lawless contends that he only agreed to do the work within a reasonable time, not necessarily in thirty days as contended by Gulf. Lawless also asserts that he was not required to pay for the materials out of his own pocket but rather he was to be allowed to draw on the $1,500 to pay the material bills as they accrued. Lawless testified that he was financially unable to purchase the materials and, therefore, would not have entered into an agreement which would not allow him to draw on the $1,500.
Bobby Forrest countered Lawless’ contentions by noting that the repairs could have been performed within a period of one month. He argued that Lawless could have utilized credit to obtain the supplies and could have had the job completed even before the bills for said supplies were due. Thereafter, Lawless could have obtained lien waivers from the suppliers or could have had the defendant issue the checks to pay the bills once they were all in hand.
The record indicates that the first work done by Lawless was in the latter part of March, 1974. This is evidenced by a letter dated May 6 from Lawless to Gulf requesting a draw of $298.95 for materials. The earliest invoice listed therein was from Travis and Sons, Hardware, dated March 28.
At the trial Lawless contended that work commenced in February. However, the only proof offered to substantiate that claim was Lawless’ own uncorroborated testimony. The evidence preponderates that the first attempts to repair the house were in March.
It is obvious from the record that irrespective of whether the agreement was to complete the work in thirty days, as contended by Gulf, or within a reasonable time, as argued by Lawless, both parties contemplated that the work should at least begin before March, which was two months after the sales took place. Therefore, Lawless neither commenced nor completed the repairs within the allotted time. However, he argues that he was excused from performing the work because the house was occupied by tenants.
While it is true that tenants occupied the house after the sale, Lawless had previously served them with a notice of termination of lease and request to vacate. The notice was given on January 7, 1974, two days prior to the sales. This was done so that Gulf could take possession of the premises. *883 On March 22, Lawless sent another notice to the tenants to vacate the property.
At no time during the period in question did Lawless resort to legal measures to force the tenants to vacate, even though he knew he was obligated to repair the house. Furthermore, Lawless was aware that under the terms of the agreement it was his responsibility to evict the tenants.
The tenants were finally evicted by Bobby Forrest’s law firm on April 5, over three months after the date of the sale, on the basis of Lawless’ January 7 notice. In order to avoid further delay, the tenants were evicted in the name of Lawless.
Lawless’ argument that the occupancy of the house excused him from performing any repairs overlooks the fact that he obviously could have at least performed the outside work on the house even though the tenants remained on the premises.
In view of the foregoing, we find that the presence of the tenants on the property was not a valid reason for Lawless to delay accomplishing the required work.
Lawless requested the first and only draw for materials on May 6, 1974. At that time he submitted a request for $298.-95, which was only partially substantiated by invoices. Gulf refused Lawless’ request, and Lawless cites the refusal to grant the draw as an additional excuse for his failure to perform.
As of the date of the request on May 6, the work had not been completed by Lawless, and in the transmittal letter requesting the draw Lawless advised Gulf that “hopefully” he would complete the work by May 20. However, after Gulf’s refusal to grant the draw, Lawless abandoned all attempts to repair the house.
At the trial Bobby Forrest explained that he refused to allow Lawless to draw on the $1,500, not only because it was contrary to their agreement but also because Lawless had resorted to hired labor to repair the house, therefore, subjecting Gulf, as owner, to the possibility of labor liens in addition to material liens.
From the record there can be no doubt but that Lawless contracted to personally perform all of the labor. Lawless acknowledged that because of financial difficulties he had agreed to perform the work himself in order to save the expense of hiring laborers. Therefore, in addition to delaying an unreasonable length of time before commencing the work, the evidence shows that Lawless deviated from the agreement when he hired other laborers to do the work for him.
Lawless contends that the refusal of his demand for the draw on May 6 was a breach of contract by Gulf. However, at that point Lawless had already breached the agreement in two ways, by failing to perform the repairs within a reasonable time and by hiring laborers to do the work.
LSA-C.C. Art. 1931 provides that a breach of contract is passive when what was covenanted to be done was either not done or was not done on time, or when it was done in a manner other than that stipulated in the contract. It, therefore, appears that the above-described actions of Lawless amounted to a passive violation of the subject agreement.
When the thing to be done was not of such a nature that it could only be done within a certain time, damages for a passive breach, as occurred herein, are due only from the time that the debtor has been put in default, LSA-C.C. Art. 1933.
Time was not of the essence in the instant contract and, therefore, damages resulting from Lawless’ breach would be due only from the date Lawless was put in default by Gulf.
Upon realizing that Lawless had deviated substantially from the agreement, Gulf made demand on Lawless on May 15, 1974, to complete the repairs within ten days. We consider that letter as sufficient to *884 place Lawless in default. Accordingly, Gulf is entitled to damages from May 25, 1974, or ten days after the date of the letter.
Concerning the amount of damages, LSA-C.C. Art. 1934 provides that in a case such as this damages due to the creditor are the amount of loss he has sustained and the profit of which he has been deprived. Furthermore, where the debtor is not guilty of fraud or bad faith, as is clearly the case herein, only such damages as were contemplated or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract are owed by the debtor.
There has been no showing that Gulf was deprived of any profit due to the breach of Lawless. However, the record does indicate that Gulf sustained a loss since the repairs were performed at Gulf’s expense after the refusal of Lawless to complete same.
Gulf’s residential builder and cost expert, William E. Day, testified that he supplied materials valued at $1,420 for the repair of the house through his construction corporation.
The labor was performed by Billy Devall, and a check payable to him in the sum of $1,912.93, dated September 25, 1974, drawn on the account of Forrest, Kiefer and Bac-ot, Attorneys at Law, was produced at trial. Both Bobby Forrest and Nelda Edwards, the secretary who prepared the check testified that said check was drawn on Gulf’s account even though the check does not reflect same. Although Devall did not appear at the trial, Day testified that he inspected the job several times and that the amount of the check accurately represented the labor performed by Devall.
In view of the foregoing, we are of the opinion that Gulf has proved by a preponderance of the evidence that it suffered losses of $1,420 for materials and $1,912.93 for labor.
Gulf also seeks recovery of $989.19, representing the total amount for nine can-celled checks in the sum of $109.91 each, payable to Union Federal Savings & Loan Association and dated February through October, 1974. These checks represented payments on the mortgage that Gulf assumed as part of the purchase price. Gulf seeks payment of all nine checks on the theory that it would not have been obligated to pay said notes if Lawless had timely completed the repairs.
There is no evidence to show that the failure of Lawless to repair the property as per his agreement' delayed the sale of the property or caused Gulf to make any additional payments on the mortgage for that reason. Furthermore, after Gulf placed Lawless in default, Gulf spent at least four or five months performing the repairs which it expected Lawless to make in one month.
Gulf also seeks recovery of $650.15 which was paid to Edwins Flooring, Inc., to repair the floor in the house. That item of repair was not listed on the Veterans Administration certificate of value and, therefore, Lawless was not required to perform the work. Since those repairs were not the responsibility of Lawless, Gulf is precluded from recovering therefor.
In its reconventional demand, Gulf sought 11 percent interest on the sum of $7,000. No evidence was presented at the trial to substantiate that loss and it is, therefore, rejected.
There is evidence that some work was performed on behalf of Lawless prior to commencement of work by Gulf. However, the record is not clear concerning how much, if any, of Lawless’ work was incorporated into the subsequent repairs performed by Gulf. The plaintiff, accordingly, failed to prove that he is entitled to a monetary credit for that amount of work.
*885 In view of the foregoing, we find that Gulf has proved losses of $1,420 and $1,912.93, or a total of $3,332.93.
The last issue on this appeal concerns Lawless’ allegations that Gulf defaulted on its agreement to repair certain defects in the Iberville Terrace property.
Lawless contends that Gulf agreed to make certain repairs to the house in addition to those required by the Veterans Administration certificate of value. The additional repairs were not made and Lawless seeks damages therefor.
On the other hand, Gulf has contended throughout the trial and also on appeal that the only agreement it entered into with Lawless concerned bringing the Iber-ville Terrace property up to the standard demanded by the Veterans Administration. Gulf points out that the defective items listed on the certificate of value were remedied by it, citing the Veterans Administration compliance inspection report of January 18, 1974, reflecting the notation “Items on C.R.V. complied with.” In the light of this, Gulf concludes that it has fulfilled its obligation under the agreement.
The trial judge did not specifically find that there was an agreement to perform these additional repairs. However, he did find as a fact that all of the defects complained of were apparent at the time of the sale and refused to allow Lawless to recover the cost of repairing them. That finding obviously negates Lawless’ argument that Gulf agreed to repair the additional items. There would be no necessity to inquire as to whether a defect is apparent or not where an agreement existed to make the repairs.
The trial judge was apparently contemplating that even though no agreement existed, Lawless might have an action for redhibition of the sale due to the defects. However, he concluded that the defects were apparent and Lawless could not ' maintain such an action.
The record amply supports a finding that Gulf’s obligation was limited to the defects listed on the certificate. Accordingly, the trial judge’s holding that Lawless was not entitled to recover for the repair of the additional defects will not be disturbed on this appeal. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
For the foregoing reasons, the judgment of the trial court is amended so as to increase the award to plaintiff in reconvention, Gulf South Title Insurance Agency, Inc., from $1,500 to the sum of $3,332.93 against defendant in reconvention, William F. Lawless. In all other respects the judgment is affirmed. All costs of this appeal are to be borne by defendant in reconvention, William F. Lawless.
AMENDED AND AS AMENDED, AFFIRMED.